**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **RICHARD SCOTT BLACKSTONE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 1:13-022762** |
| | ) | |
| **MR. MASTERS, Warden,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court are the following: (1) Plaintiff's "Motion to Dismiss Without Prejudice Both Defendants Panaguiton and Matos" (Document No. 48), filed on April 11, 2016; and (2) Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 53), filed on May 10, 2016. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 55.) Plaintiff filed his Responses in Opposition on July 5, 2016. (Document Nos. 58 – 60.) Having examined the record and considered the applicable law, the undersigned has concluded that Plaintiff's "Motion to Dismiss Without Prejudice Both Defendants Panaguiton and Matos" should be denied and Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" should be granted.

**FACTUAL AND PROCEDURAL HISTORY**

On September 10, 2013, Plaintiff, acting *pro se* and then incarcerated at FCI McDowell,

filed his Application under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or

Federal Custody.[1] (Document No. 1.) Plaintiff named Warden Masters as the Defendant. (Id.)

Plaintiff complained that the BOP was violating his constitutional rights by failing to provide him

with adequate medical care for severe burns to his leg and foot. (Id., pp. 6 - 7.) As relief, Plaintiff

requested that the "Court allow [him] to see an outside doctor or burn specialist to assess [his]

injuries from an incident that happened in January of 2013." (Id., p. 8.)

By Standing Order, this matter was referred to the United States Magistrate Judge Cheryl

A. Eifert for submission of proposed findings of fact and a recommendation for disposition

pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 2.) By Order entered on September 13, 2013,

Judge Eifert determined that an initial review of Plaintiff's Section 2241 Petition revealed that he

was seeking "relief under 28 U.S.C. § 1331 (a *Bivens* action) for alleged violations of his

constitutional rights. (Document No. 3.) Judge Eifert, therefore, ordered that Plaintiff "(1)

complete and file a *Bivens* complaint form, and (2) pay the $400 filing fee or submit an Application

to Proceed Without Prepayment of Fees and Costs and a Consent to Collection of Fees from Trust

Account." (Id.)

On October 7, 2013, Plaintiff filed his Motion to Proceed Without Prepayment of Fees and

Costs and his Complaint alleging violations of his constitutional and civil rights pursuant to Bivens

v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24

L.Ed.2d 619 (1971). (Document Nos. 4 and 6.) In his Complaint, Plaintiff names the following as

Defendants: (1) Karen Hogsten, Warden of FCI McDowell; (2) Mrs. Panaguiton, P.A. 2 at FCI

---

[1]   Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a
less stringent standard than if they were prepared by a lawyer and therefore, they are construed
liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

McDowell; (3) Mr. Goode, P.A. 1 at FCI McDowell; (3) Erik Holder, U.S. Attorney General; (4) Booth Goodwin, U.S. Attorney of West Virginia (Southern District); (5) Dr. Matos, Doctor at FCI McDowell; (6) Kelly Lucas, Health Service Administrator at FCI McDowell; (7) Mr. Bowling, Food Service Administrator at FCI McDowell; (8) Mr. Hacker, Safety Administrator at FCI McDowell; (9) Mrs. Wright, "Womens" (sic) Doctor at Alderson Prison for Women; (10) "Others yet to be named et. al. etc." (sic) at FCI McDowell. (Document No. 4.) Plaintiff asserts that the various defendants violated his constitutional rights by failing to properly treat him for burns and other injuries he suffered on or about January 27, 2013, while working for Food Service at FCI McDowell. (Id.)

By Order entered on October 9, 2013, the above action was transferred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).[2] (Document No. 9.)

On March 3, 2015, Plaintiff filed a letter-form Motion for Voluntary Dismissal. (Document No. 13.) In support of his Motion, Plaintiff explains that "[o]n or about September 2013,[3] I filed a Bivens in which I received the above listed case number." (Id.) Plaintiff notes that he is acting *pro se*, and "I had to learn as I went along." (Id.) Plaintiff, therefore, requests "that Your Honor please dismiss my filing of the Bivens without prejudice [because he] wishes to refile under the same

---

[2] By Order entered on January 6, 2016, the above case was referred to United States Magistrate Judge Omar J. Aboulhosn for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 17.)

[3] The undersigned notes that Plaintiff filed his Section 2241 Petition on September 10, 2013. (Document No. 1.) The Court found that Plaintiff was only requesting that his Section 2241 Petition, which inappropriately challenged the conditions of his confinement be dismissed. Plaintiff filed his Complaint on October 4, 2013, appropriately asserting his Complaint alleging violations of his constitutional and civil rights pursuant to *Bivens*.

3

case number a Tort in place of the <u>Bivens</u> without violating the statute of limitations." (<u>Id.</u>)

By Proposed Findings and Recommendation entered on January 11, 2016, the undersigned recommended that the District Court grant Plaintiff's letter-form Motion for Voluntary Dismissal, dismiss Plaintiff's Section 2241 Petition, and refer the matter back to the undersigned for further proceedings regarding Plaintiff's <u>Bivens</u> claim. (Document No. 20.) By Order entered the same day, the undersigned also granted Plaintiff's Motion to Amend his Complaint. (Document No. 21.) By Memorandum Opinion and Order entered on February 18, 2016, United States District Judge David A. Faber adopted the undersigned's recommendation and referred the matter back to the undersigned for further proceedings on Plaintiff's <u>Bivens</u> claim. (Document No. 24.)

On February 24, 2016, Plaintiff filed his Amended Complaint naming the following as Defendants: (1) Mr. Masters, Warden of FCI McDowell; (2) Karen Hogsten, former Warden of FCI McDowell; (3) Kelly Lucas, Health Services Administrator of FCI McDowell; (4) Mr. Goude, Physician Assistant at FCI McDowell; (5) Mrs. Panaguito, Physician Assistant at FCI McDowell; (6) Mr. Bowling, Food Services Administrator at FCI McDowell; (7) Mr. Hacker, Safety Administrator of FCI McDowell; (8) Dr. Matos, Health Services Employee for the BOP; (9) Dr. Wright, Health Services Employee for the BOP; and (10) The United States of America. (Document No. 25.) Plaintiff alleges that the above Defendants acted with negligence and deliberate indifference by failing to provide appropriate treatment for burns and other injuries he suffered on or about January 27, 2013. (<u>Id.</u>, p. 2.) Specifically, Plaintiff alleges that he fell while carrying hot water when working as a kitchen worker at FCI McDowell on January 27, 2013. (<u>Id.</u>) Plaintiff contends that he "injured his tail bone" and "burned his leg and foot." (<u>Id.</u>) Plaintiff states that he was examined by PA Panaguito, who "diagnosed Plaintiff's injuries as minor and his burns

4

as second degree." (<u>Id.</u>) Plaintiff claims that he "requested to see a burn specialist, but PA Panaguito denied that request." (<u>Id.</u>, p. 3.) Plaintiff contends that he then requested to be evaluated by a doctor, but PA Panaguito also denied that request. (<u>Id.</u>) Plaintiff alleges that in July 2013, PA Panaguito "admitted that Plaintiff's burns had been initially misdiagnosed as second degree" and updated his diagnosis to the third degree burns. (<u>Id.</u>) Plaintiff alleges that PA Goude "medically cleared Plaintiff to work six months before being seen" and refused to provide Plaintiff with medication. (<u>Id.</u>) Plaintiff explains that PA Goode instructed him to purchase medication from the commissary. (<u>Id.</u>) Plaintiff complains that Dr. Matos only provided him with a prescription "after six months of filing prison grievances." (<u>Id.</u>) Finally, Plaintiff argues that he "e-mail Mrs. Hogsten about his injuries and the need for urgent medical attention, but received no response." (<u>Id.</u>) Plaintiff alleges that the foregoing resulted in him suffering permanent injuries. (<u>Id.</u>) As relief, Plaintiff requests the Court (1) "find Defendants to be negligent," (2) "award Plaintiff $3,000,000.00," and (3) "grant any other relief that this Court deems fit." (<u>Id.</u>, p. 4.)

By Order entered on February 26, 2016, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 26.) On the same day, the Clerk's Office mailed a Summons and Complaint by certified mail/return receipt requested to each Defendant. (Document No. 27.) On March 14, 2016, the Summonses were returned unexecuted for Defendants Panaguiton and Matos. (Document No. 39 - 40.) By Order entered on March 16, 2016, the undersigned directed Plaintiff to provide the Court with an updated address for Defendants Panaguiton and Matos on or before April 18, 2016. (Document No. 45.) On March 11, 2016, Plaintiff filed his "Motion to Dismiss Without Prejudice Both Defendants Panaguiton and Matos." (Document No. 48.) Specifically, Plaintiff stated that he had

"made every effort to locate these named Defendants so that service could be made on them [but] these efforts have been unsuccessful." (Id.) Therefore, Plaintiff requested that Defendants Panaguiton and Matos be dismissed without prejudice. (Id.)

On May 10, 2016, Defendants filed their "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 53 and 54.) First, Defendants argue that Plaintiff's FTCA claim should be dismissed because: (1) "The Inmate Accident Compensation Act provides the exclusive remedy for Plaintiff's injuries and his medical treatment" (Document No. 54, pp. 12 – 13.); and (2) "Plaintiff's claim of negligent medical care must also be dismissed for failure to comply with the West Virginia Medical Professional Liability Act" (Id., pp. 13 - 16.) Next, Defendants argue that Plaintiff's Bivens claim should be dismissed because: (1) "Plaintiff's Amended Complaint fails to allege constitutional violations" (Id., pp. 16 – 19.); (2) "Plaintiff cannot establish an Eighth Amendment violation" (Id., pp. 19 – 25.); (3) "Defendants are entitled to qualified immunity" (Id., pp. 25 – 27.); and (4) "HSA Lucas is a U.S. Public Health Service Employee and is entitled to absolute immunity" (Id., p. 27 – 28.).

As Exhibits, Defendants attach the following: (1) The Declaration of Sharon Wahl (Document No. 53-1, pp. 1 - 2.); (2) A copy of Plaintiff's "Claim for Damage, Injury or Date" (Tort Claim No. TRT-MXR-2013-0609) dated June 17, 2013 (Id., pp. 4 – 6.); (3) A copy of the Tort Claim denial letter dated July 10, 2013 (Id., p. 8.); (4) The Declaration of William Goode (Document No. 53-2, pp. 1 – 4.); (5) A copy of Plaintiff's pertinent medical records (Id., pp. 6 – 65.); and (6) The Declaration of Kelly Lucas (Document No. 53-3.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on May 11, 2016, advising him of the right to file a response to the Defendants' "Motion

to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 55.) On July 5, 2016, Plaintiff filed a Response in Opposition, Memorandum in Support, and Declaration. (Document Nos. 58 – 60.) On July 11, 2016, Plaintiff filed his Motion to Amend his Response in Opposition. (Document No. 61.) Specifically, Plaintiff requests that the Court accept the attached "picture of injury into evidence." (Id.) By separate Order entered this day, the undersigned has granted Plaintiff's Motion to Amend his Response in Opposition.

## **FACTUAL HISTORY**

Based upon a review of Plaintiff's medical records, Plaintiff reported to Health Services at FCI McDowell on January 27, 2013, stating that he slipped and fell in the kitchen while carrying a bucket of hot water to sanitize the tables. (Document No. 53-2, pp. 6 - 18.) Plaintiff complained of pain as to the burn areas on both lower legs. (Id.) Plaintiff further stated that he "wanted to go out to see a real doctor, please help me to go out." (Id.) Plaintiff was examined by Physician Assistant ["P.A."] Elizabeth Panaguiton, who noted that Plaintiff had a contusion to his back and first to second degree burns on his right lower leg, left lower leg, and dorsum of his feet. (Id.) P.A. Panaguiton treated Plaintiff's burns by aseptically sloughing off the skin, cleaned the area, applied Silvadene cream, and applied Xeroform gauze to avoid adhesion of the gauze to the burn area. (Id.) P.A. Panaguiton noted that she had to call the Lieutenant to medical because Plaintiff refused to heed her instructions "not to pick on the sloughed skin after" the area was cleaned and refused to allow her to apply Silvadene cream. (Id.) P.A. Panaguiton noted that Plaintiff allowed her to apply the cream after the Lieutenant came to medical. (Id.) P.A. Panaguiton prescribed Ibuprofen 800 mgs for pain, Penicillin 500 mgs, and Silver Sulfadizine cream. (Id.) P.A. Panaguiton further ordered x-rays of Plaintiff's lower back. (Id.) Finally, P.A. Panaguiton scheduled Plaintiff to return

7

to medical for the next nine days for dressing changes. (Id.) The x-ray of Plaintiff's back was conducted on January 28, 2013, which revealed negative findings. (Id., p. 20.)

On January 29, 2013, Plaintiff returned to Health Services for a dressing change. (Id., pp. 21 – 22.) Plaintiff was treated by Registered Nurse ["R.N."] K.L. Goan, who changed the dressings and applied Silvadene cream. (Id.) R.N. Goan noted that the burns showed improvement. (Id.) R.N. Goan further noted that Plaintiff was leaving the institution via a state writ. (Id.) Therefore, R.N. Goan applied abdominal pads to Plaintiff's ankles to prevent injury from the shackles and instructed Plaintiff as to wound care. (Id.) Plaintiff's prescription for Ibuprofen and Penicillin were continued. (Id.) Plaintiff left FCI McDowell on the same day via writ. (Id.)

On February 15, 2013, Plaintiff returned to FCI McDowell and was screened by Health Services. (Id., pp. 23 – 28.) Plaintiff was evaluated by R.N. Goan, who noted that Plaintiff complained that the burns on his legs were painful. (Id.) R.N. Goan approved Plaintiff for medical shoes and noted no work restrictions. (Id.) On February 16, 2016, Plaintiff reported to Health Services complaining that the burn to his right lower leg was infected. (Id., pp. 28 – 31.) Plaintiff was examined by R.N. W. Walters, who noted that the burn had a scab "with very small amount of sero drainage" and no signs of infection. (Id.) R.N. Walters instructed Plaintiff to leave the wound open to air to aid in the healing process and to report to Health Services immediately if his condition worsens. (Id.)

On March 1, 2013, Plaintiff reported to Health Services for a follow-up appointment regarding the burns to his lower legs. (Id., pp. 32 - 33.) Plaintiff stated that the area was "tight," but he denied any pain, redness or discharge. (Id.) Plaintiff requested permission to use utter balm on his leg. (Id.) Plaintiff was evaluated by P.A. William Goode. (Id.) P.A. Goode noted that

8

Plaintiff's wounds were clean and dry with no signs of infection and a "good eschar was in place, healing well." (Id.) On March 4, 2013, Plaintiff was evaluated at Health Services at the request of HAS Lucas. (Id., pp. 34 - 36.) P.A. Panaguiton noted that she was requested to evaluate Plaintiff based upon his complaint that he had not been seen by a provider. (Id.) Plaintiff acknowledged that he had not taken his prescribed penicillin, but had stored it in his locker. (Id.) Upon examination of Plaintiff's right lower leg, P.A. Panaguiton noted that there was a "big area that has scab present with erythema just around the scab border." (Id.) P.A. Panaguiton further noted that there was no drainage, the skin was not warm or tender, and the wound was improving. (Id.) Upon the examination of Plaintiff's left lower leg, P.A. Panaguiton noted that the area was normal with no sign of infection. (Id.) Plaintiff advised to "avoid forcibly plucking the scab because it will bleed." (Id.) On March 26, 2013, Plaintiff went to Health Services requesting "ointment to put on my skin." (Id. 37 - 39.) P.A. Panaguiton examined Plaintiff noting that the burn to Plaintiff's right lower leg was healed. (Id.) P.A. Panaguiton noted that there was still a spot where a scab was present with some redness to the skin around the scab, but no oozing, discharge, or bleeding. (Id.) P.A. Panaguiton again advised Plaintiff to avoid picking at the scab and to let it fall off. (Id.) P.A. Panaguiton further provided Plaintiff was packs of ointment to apply daily to the area around the scab. (Id.) Plaintiff was instructed to follow-up at sick call as needed. (Id.)

On April 19, 2013, Plaintiff reported to Health Services for follow-upon concerning his burns. (Id., pp. 40 – 43.) Plaintiff, however, refused to wait and see a Physician Assistant. (Id.) On May 14, 2013, Plaintiff reported to Health Services for a follow-up appointment regarding the burn to his right lower leg. (Id., pp. 44 - 47.) Plaintiff acknowledged that the area was healed and denied any pain, but noted some tenderness to the area at times. (Id.) P.A. Goode examined Plaintiff noting

that the "right lower leg burn was completely healed, skin intact, dry and warm, and no redness, swelling or discharge." (Id.) On May 29, 2013, Plaintiff was evaluated by Dr. H. Matos. (Id., pp. 48 - 50.) Dr. Matos noted that the burns to Plaintiff's lower legs were completely healed with new skin, mild red/pink in color, with scaling on a small area (2cm x 2 cm) inflicted by Plaintiff's scratching. (Id.) Dr. Matos noted no swelling or discharge. (Id.) Dr. Matos advised Plaintiff that the new skin was not as strong as the skin prior to injury and that Plaintiff would need to take care of the new skin by keeping the skin moisturized and refraining from scratching. (Id.)

On June 11, 2013, Plaintiff was evaluated by P.A. Goode following Plaintiff's complaint to executive staff. (Id., pp. 51 - 53.) Plaintiff complained of pain and dry skin on his right lower leg. (Id.) Plaintiff acknowledged that he had not been applying over-the-counter lotion or cream to the area because he did not think he should have to buy it. (Id.) P.A. Goode noted that even though Plaintiff complained of back pain, Plaintiff refused to have a urinalysis. (Id.) Upon examination, P.A. Goode noted that there was a 2 x 2.5 cm area of dry scaling skin, but no redness or discharge. (Id.) P.A. Good further noted that the "area has good pink tissue with no sign of infection." (Id.) P.A. Goode provided Plaintiff with a commissary slip for Eucerin cream, but Plaintiff stated that he would not be purchasing the cream. (Id.) It was noted that Plaintiff "was very disrespectful on exam and stated 'You people don't know a damn thing about burns.'" (Id.)

On June 18, 2013, Plaintiff was evaluated by P.A. Goode and Dr. Wright. (Id., pp. 54 - 57.) Plaintiff complained of a "tight tingling sensation over the area of the burn." (Id.) P.A. Goode and Dr. Wright advised Plaintiff that his symptoms were normal for a burn and that he would have a scar over the area. (Id.) Plaintiff agreed that his right lower leg was healing. (Id.) Upon examination, it was noted that there was area of good pink tissue with no signs of infection. (Id.)

Dr. Wright suggested that Plaintiff return to full duty at work and be issued an ankle brace. (Id.) Plaintiff was again instructed to use over-the-counter lotion as needed. (Id.) On June 19, 2016, Plaintiff returned to Health Services complaining that he should not have to purchase lotion from the commissary because he was burned at the institution. (Id., pp. 58 - 60.) Plaintiff asserted that Health Services should provide him with the lotion. (Id.) P.A. Goode evaluated Plaintiff and prescribed Moisturin Cream for use two times a day for 30 days. (Id.)

On July 30, 2013, Plaintiff was evaluated by Dr. Matos at the request of executive staff based upon Plaintiff's complaint of discomfort from the second degree burns to his right leg. (Id., pp. 61 - 63.) Dr. Matos noted that the "burn is healed, but the distal portion of his right leg shows granulation tissue, dryness, itch, and discomfort." (Id.) Plaintiff again complained that he should not have to buy the lotion from the commissary. (Id.) Dr. Matos prescribed Moisturin Cream, instructed Plaintiff not to touch the granulation area, and apply hot compress as needed. (Id.) Plaintiff was transferred from FCI McDowell on December 27, 2013. (Id., p. 4.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### **Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

1.     **Plaintiff's Motion for Dismissal:**

In his "Motion to Dismiss Without Prejudice Both Defendants Panaguiton and Matos," Plaintiff requests that Defendants Panaguiton and Matos be voluntary dismissed due to his inability to effect service upon them. (Document No. 48.) Specifically, Plaintiff states that he has "made every effort to locate these named Defendants so that service could be made on them [but] these efforts have been unsuccessful." (Id.) Therefore, Plaintiff requests that Defendants Panaguiton and Matos be dismissed without prejudice. (Id.)

Defendants failed to file a Response to Plaintiff's "Motion to Dismiss Without Prejudice Both Defendants Panaguiton and Matos."[4] Instead, Defendants filed their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" on May 10, 2016. (Document Nos. 53 and 54.) Rule 12(h) of the Federal Rules of Civil Procedure provides that a defendant raising a defense of service of process must do so in the party's first responsive pleading or by motion before the first responsive pleading. Fed.R.Civ.P.12(h). Specifically, Rule 12(h)(1)(B) provides that a party waives the defense of insufficient service of process by "failing to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading in an amendment allowed by Rule 15(a)(1) as a matter of course." Fed.R.Civ.P.12(h)(1)(B); Pusey v. Dallas Corp., 938 F.2d 498, 501 (4th Cir. 1991)("[B]y failing to raise the defense . . . in a pre-answer motion or, if no such motion is made, then in its answer, a defendant waives the defense and submits to the personal jurisdiction of the court.") In the instant case, Defendants Panaguiton and Matos failed to file a motion under Rule

---

[4] In the United States' "Motion for Consolidate Response," counsel acknowledges that Plaintiff moved to dismiss Defendants Panaguiton and Matos. (Document No. 49.)

12(b)(5) challenging service, and similarly failed to raise the issue of services in their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Document No. 53.) Accordingly, the undersigned finds that Defendants Panaguiton and Matos waived their defense of insufficient service of process. Accordingly, the undersigned finds that the merits of Plaintiff's claims against Defendants Panaguiton and Matos should be addressed and Plaintiff's "Motion to Dismiss Without Prejudice Both Defendants Panaguiton and Matos" (Document No. 48) should be denied.

**2.**   **FTCA Claim:**

**A.**   **Inmate Accident Compensation Act.**

In its Motion, the United States argues that Plaintiff cannot recover under the FTCA because his claims are barred by the IACA. (Document No. 54, pp. 12 - 13.) The United States argues that Plaintiff's injuries were sustained while performing his job duties in the kitchen at FCI McDowell. (Id.) The United States contends that "[t]here is no dispute in this case that Plaintiff's injury was a work related injury." (Id.) Accordingly, the United States argues that the IACA "provides the exclusive remedy for Plaintiff's injuries and medical treatment." (Id.)

In his Response, Plaintiff does not appear to dispute that his injures were work related. (Document No. 59, p. 4.) Plaintiff, however, continues to argue that the United States should held responsible for those injuries. (Id.) Specifically, Plaintiff argues that when "an incarcerated American citizen, incarcerated by the United States, has been severely burned and left to suffer untold pain because of a work related injury," the United States Government is responsible. (Id.) Plaintiff contends that "the FTCA claim is against the medical department and its employees for their negligence . . ., which has nothing to do with the [IACA]." (Id., p. 5.)

14

The Inmate Accident Compensation Act [IACA] provides an accident compensation procedure "for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126(c)(4). Federal prisoners, however, cannot recover under the FTCA for work-related injuries as the Prison Industries Fund, 18 U.S.C. § 4126, provides the exclusive remedy for injuries incurred in work-related incidents. See United States v. Demko, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966). Recovery is barred under the FTCA for the work-related injury itself and for the negligent treatment of that injury. Vander v. U.S. Dept. of Justice, 268 F.3d 661 (9th Cir. 2001); also see Cooleen v. Lamanna, 248 Fed. Appx. 357, 362 (3rd Cir. 2007)(finding that a claim brought in connection with subsequent negligence of prisoner doctors, rather than the initial work-related injury, is barred by Section 4126); Wooten v. United States, 825 F.2d 1039, 1044 (6th Cir. 1987)("Section 4126 is also the exclusive remedy when a work-related injury is subsequently aggravated by negligence and malpractice on the part of prison officials."); Thompson v. United States, 495 F.2d 192, 193 (5th Cir. 1974)("Despite the appellant's allegation that the negligence of the hospital worker occasioned further injuries, for which he seeks damages, he is barred from litigating the matter under the [FTCA] since the cause of his original injury was work-related and compensable under 18 U.S.C. § 4126."); Cook v. United States, 2012 WL 5383395 (D.S.C. Nov. 1, 2012), aff'd.,530 Fed.Appx 217 (4th Cir. 2013), cert. denied, ___ U.S. ___, 134 S.Ct. 1292, 188 L.Ed.2d 319 (2014)("The Inmate Accident Compensation Act is also the exclusive remedy for negligent treatment of federal prisoners' work-related injuries."). A "work-related injury" is "defined to include any injury including occupational disease or illness proximately caused by the actual performance of the inmate's work assignment." 28 C.F.R. § 301.102(a). "Work location" is

defined by the BOP as "any place that inmate is authorized to be performing his assignment." BOP Program State 1600.09. "The cause of the injury is irrelevant so long as the injury itself occurred while the prisoner was on the job." Aston v. United States, 625 F.2d 1210, 1211 (5th Cir. 1980)(per curiam). Section 4126 not only covers injuries incurred while working in the prison, but includes pre-existing medical conditions that are subsequently injured or exacerbated in work-related incidents. See Vander, supra 268 F.3d at 664; Wooten v. United States, 825 F.2d 1039 (6th Cir. 1987); Aston, 625 F.2d at 1211. Section 301.301(c), however, provides that "compensation shall not be paid for injuries suffered away from the work location (e.g., while the claimant is going to or leaving work, or going to or coming from lunch outside of the work station or area)." 28 C.F.R. § 301.301(c).

Courts have broadly construed the term "work-related" injury. In Baynes v. United States, 302 Fed.Appx. 334 (6th Cir. 2008), the Sixth Circuit determined that an injury occurring during a trip to or from a job site, while on-the-clock, was a work-related injury. Baynes, 302 Fed.Appx. at 335-36; also see Payton v. United States, 2011 WL 3240487 (E.D.N.C. July 28, 2011)(although the injury occurred while plaintiff was traveling to lunch, the court concluded the injury was work-related because the injury occurred while plaintiff was still on-the-clock and being paid.) In Wooten v. United States, 437 F.2d 79 (5th Cir. 1971), the Fifth Circuit determined that an inmate suffered a work-related injury where the inmate was injured on the work site while traveling to lunch. Wooten, 437 F.2d at 80(finding inmate suffered a work-related injury while traveling on an elevator on his way to lunch). Courts are generally unwilling to determine that an inmate's injury is work-related absent evidence that the injury occurred during work activities, on the work site, or while the inmate was "on-the-clock." See Goforth v. United States, 2010 WL 3835541

16

(S.D.W.Va. Sep. 29, 2010)(denying summary judgment where there was "some evidence in the record to support [Plaintiff's] contention" that she was going to her job site at the time of her accident."); Codianni-Robles v. United States, 2005 WL 2098837 * 2 (D.Conn. Aug. 29, 2005)(the District Court denied the government's motion to dismiss finding inadequate evidence that plaintiff's injuries were work-related because "she had finished her work assignment earlier in the day" and a "different inmate was assigned to work at the time of her accident.").

Based upon a review of the record, the undersigned finds that it is undisputed that Plaintiff's injuries occurred while he was on the job and the injuries were "work-related." The record reveals that Plaintiff worked in the kitchen area and the injury occurred while he was sanitizing the tables with hot water. Plaintiff states that he fell while carrying a bucket of hot water, which caused hot water to spill onto his lower legs resulting in injury. Thus, the undersigned finds that Plaintiff's injuries were work-related. Based on the foregoing, the undersigned recommends that the District Court grant the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment."

### B.    Failure to satisfy the requirements of the MPLA.

Notwithstanding the foregoing, the undersigned will consider Plaintiff's medical negligence claim. An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA, however, does not create a new cause of action. <u>Medina v. United States</u>, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." <u>Id.</u>

In the present case, Plaintiff alleges that Defendants' negligent acts occurred in the State of West Virginia. Accordingly, West Virginia State law applies. Under West Virginia law, a plaintiff must satisfy certain prerequisites prior to filing suit against a health care provider. Specifically, a plaintiff must serve each defendant health care provider with a notice of claim with an attached screening certificate of merit executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit. W. Va. Code § 55-7B-6.[5] Compliance with West Virginia Code § 55-7B-6 is mandatory prior to

---

[5]   West Virginia Code § 55-7B-6 provides the following in pertinent part:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying the provisions of this section.

> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening

filing suit in federal court. Stanley v. United States, 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004); also see Starns v. United States, 923 F.2d 34 (4th Cir. 1991)(holding that Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA). West Virginia Code § 55-7B-6(c), however, provides that no screening certificate of merit is necessary where "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care."

Plaintiff alleges that Defendants acted with negligence in diagnosing and providing medical treatment for his burns. In its Motion, the United States contends that Plaintiff's claim should be dismissed because he failed to timely and properly file a notice of claim and a screening certificate of merit pursuant to the MPLA. (Document No. 54, pp. 13 - 16.) In Response, Plaintiff argues that he is currently "being seen by a burn specialist and will soon be in compliance with the West Virginia Medical Professional Liability Act." (Document No. 58, p. 1.)

To the extent Plaintiff argues that he will soon file a Certificate of Merit resulting in compliance with the MPLA, Plaintiff's claim is without merit. As explained above, compliance with West Virginia Code § 55-7B-6 is mandatory *prior* to filing suit in federal court. The undersigned, therefore, will consider whether expert testimony is necessary in the instant case. Under West Virginia law, "[i]t is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses." Syllabus Point 2, Roberts v. Gale, 149 W.Va. 166, 139 S.Ed.2d 272 (1964). Expert testimony, however, is not required "where

---

certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." Farley v. Shook, 218 W.Va. 680, 629 S.E.2d 739 (2006). The MPLA provides as follows concerning claims "based upon a well-established legal theory of liability":

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

West Virginia Code § 55-7B-6(c). In Johnson v. United States, 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. Id. The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard of care because plaintiff stated on his form that the surgeon "implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." Id. at 858.

Unlike the facts in Johnson, Plaintiff's allegations of negligence are complex and expert testimony is necessary. See O'Neil v. United States, 2008 WL 906470 (S.D.W.Va. Mar. 31, 2008)(finding that plaintiff was not excused from filing a screening certificate of merit because the treatment and diagnosis of Graves disease, hyperthyroidism, congestive heart failure, and cardiomyopathy, are not within the understanding of lay jurors by resort to common knowledge

and experience); <u>also see</u> <u>Giambalvo v. United States</u>, 2012 WL 984277 * 4 (N.D.W.Va. March 22, 2012)(finding that *Johnson* "is a rare exception to 'the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses.'"). In the instant case, it appears that Defendants examined Plaintiff's burns, aseptically sloughed off the skin, cleaned the area, applied burn cream and non-adhesive gauze, and prescribed pain medication, burn cream, and Penicillin. Plaintiff, however, contends that Defendants misdiagnosed the severity of his burns and provided inadequate treatment, which resulted in him suffering unnecessary pain and scarring to his legs. Expert testimony is necessary to support a finding that the medical treatment provided by Defendants fell below the applicable standard of care. Plaintiff's medical records reveal that Plaintiff suffered from second degree burns. The undersigned first finds that the signs and symptoms of what constitutes each burn degree is not within the common knowledge of a lay person. Furthermore, the undersigned finds that what constitutes proper wound care, timely treatment, risk factors, and appropriate treatment options[6] for a second degree burn is not within the understanding of lay jurors by resort to common knowledge and experience. Accordingly, Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c). The undersigned, therefore, recommends that the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted.

**3.      <u>Bivens Claim</u>:**

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." <u>Turner v. Safley</u>, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A <u>Bivens</u>

---

[6]    Specifically, whether the above conditions could be treated by medical staff within the prison or whether treatment from a burn specialist was necessary.

action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. <u>See</u> <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; <u>See also</u> <u>Carlson v. Green</u>, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending <u>Bivens</u> to Eighth Amendment claims); <u>Davis v. Passman</u>, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending <u>Bivens</u> to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A <u>Bivens</u> action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law.[7] The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an

---

[7] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id*.

Eighth Amendment constitutional violation pursuant to <u>Bivens</u>. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, <u>Bivens</u> claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reinbold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

### A.   Defendant Lucas is entitled to absolute immunity.

In Defendants' Motion, Defendant Lucas argues that she is a United States Public Health Service Employees and is entitled to absolute immunity. (Document No. 54, pp. 27 – 28.) In support, Defendant Lucas attaches her Declaration stating as follows: "I am a Commissioned Officer in the United States Public Health Service (PHS) and have been commissioned throughout my entire time at FCI McDowell." (Document No. 53-3.) Plaintiff failed to file a Response to Defendants' Motion. (Document Nos. 58, 59, and 60.)

> Title 42 U.S.C. § 233(a) provides as follows:
>
> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 . . . for damages for personal injury, including death, resulting from the performance of medical, surgical, dental or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee . . . whose act or omission gave rise to the claim.

Thus, Congress made proceedings under the Federal Tort Claims Act the sole avenue to seek relief against a Public Health Service employee for injuries resulting from the employee's performance of medical functions within the scope of his or her employment. The United States Supreme Court has held that "[t]he immunity provided by § 233(a) precludes *Bivens* actions against individual [Public Health Service] officers or employees for harms arising out of constitutional violations

committed while acting within the scope of their office or employment." <u>Hui v. Castaneda</u>, 559 U.S. 799, 130 S.Ct. 1845, 1847, 176 L.Ed.2d 703 (2010)(stating that Section 233(a) "plainly precludes a *Bivens* action against petitioners by limiting recovery for harms arising from the conduct at issue to an FTCA action against the United States.") Defendant Lucas holds the position of the Health Services Administrator at FCI McDowell. Thus, Plaintiff appears to allege that Defendant Lucas is responsible for failing to ensure that he was properly diagnosed and provided appropriate medical care. Defendant Lucas was clearly acting within the scope of her employment when performing functions pertinent to her position, such as her administrative oversight and supervision of the Health Services Department. Based on the foregoing, the Court finds that Defendant Lucas was a Commissioned Officer in the United States Public Health Service during the time period relevant to this Complaint and has absolute immunity from suit for all claims arising from the medical care provided to Plaintiff. The Court, therefore, respectfully recommends that Defendant Lucas' "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" be granted. The undersigned finds it unnecessary to consider the other reasons which Defendant Lucas has submitted for dismissal as to Plaintiff's <u>Bivens</u> claim.

**B.      Plaintiff's claims against Defendants Masters, Hogsten, Bowling, and Hacker.**

In his Complaint, Plaintiff names the following as Defendants: (1) Warden Masters, former Warden of FCI McDowell; (2) Warden Hogsten, former Warden of FCI McDowell; (3) Mr. Bowling, former Food Services Administrator; and (4) Mr. Hacker, Safety Administrator. Although Plaintiff fails to assert any specific claims against the foregoing Defendants, Plaintiff appears to contend that the above Defendants violated his constitutional rights by failing to ensure his safety and that he received proper medical treatment. (Document No. 25.) In Defendants'

Motion, Defendants Masters, Hogsten, Bowling, and Hacker contend that Plaintiff fails to set out any constitutional claims against Defendants and "[t]hese Defendants are apparently named only because of their current and former supervisory positions." (Document No. 54, pp. 26 – 27.) Defendants state that they "did not provide medical care to Plaintiff and were not directly involved in the medical care of inmates." (Id.) In Response, Plaintiff first argues that "[t]he Warden was directly involved with this situation [because] [t]he Warden ordered the Health Services Administrator to treat me." (Document No. 60, p. 1.)

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 129 S.Ct. at 1948("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Also see Monell v. Department of Social Services of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability, however, may attach to a supervisory official if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by* County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Further, supervisory officials may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Thus, the inquiry for the Court is whether the Defendants individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner,

927 F.2d 1312, 1315 (4th Cir. 1991).

Defendants Masters, Hogsten, Bowling, and Hacker argue that Plaintiff has failed to demonstrate how each were personally involved in violating any of Plaintiff's constitutional rights. Essentially, Plaintiff appears to allege that the above Defendants violated his constitutional rights with respect to their failure to supervise employees. In order to succeed on a medical claim against non-medical personnel, plaintiff must establish that non-medical personnel were personally involved in a denial of treatment, deliberately interfered with treatment, or tacitly authorized or were indifferent to a prison physician's conduct. Lewis v. Angelone, 926 F. Supp. 69, 73 (W.D.Va. 1996). Furthermore, non-medical prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Miltier v. Beorn, 896 F.2d 848, 854 - 55 (4th Cir. 1990)(*recognized in* Sharpe v. South Carolina Dept. of Corr., 621 Fed.Appx. 732, 733 (4th Cir. 2015) *as overruled in part on other grounds by* Farmer, 511 U.S. at 837, 114 S.Ct. 1970). The undersigned finds there is no evidence that the above Defendants were personally involved in a denial of treatment to Plaintiff, deliberately interfered with Plaintiff's treatment, or tacitly authorized the medical staffs' conduct. Plaintiff appears to acknowledge that when the Warden was made aware of his complaint of inadequate medical care, the Warden directed Health Services to evaluate Plaintiff. (Document No. 60, p. 1.) Thus, the foregoing does not support a finding that the Warden denied treatment, deliberately interfered with treatment, or tacitly authorized misconduct by medical staff. Accordingly, the Court therefore finds that Defendants Masters, Hogsten, Bowling, and Hacker's "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" should be granted as to Plaintiff's Bivens claim. The undersigned finds it unnecessary to consider the other reasons which Defendants Masters, Hogsten, Bowling, and Hacker have

submitted for dismissal of Plaintiff's <u>Bivens</u> claim.

      **C.**     **No evidence of deliberate indifference by individual Defendants.**

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." <u>Wolfish v. Levi</u>, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, <u>Bell v. Wolfish</u>, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). <u>See also</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), <u>quoting</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" <u>Id.</u> at 298, 111 S.Ct. 2321 (<u>citing</u> <u>Rhodes v. Chapman</u>, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must

prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. The Fourth Circuit stated the applicable standard in Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. * * * Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir.

28

1975)(Summary judgment for defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must first allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical consequences.

       *(i)*       ***Tailbone Injury.***

The allegations contained in Plaintiff's Complaint concerning the alleged injury to his tailbone do not present a claim of constitutional magnitude. (Document No. 25.) The undersigned finds that Plaintiff's general allegation that Defendants failed to provide medical treatment for his tailbone injury is insufficient to state a claim under the Eight Amendment. The undersigned first finds that under an objective standard, Plaintiff fails to allege a "sufficiently serious" deprivation of medical care resulting in a "serious or significant physical or mental injury." Plaintiff merely alleges that he suffered an injury to his tailbone. Plaintiff does not allege that he was at risk of death or permanent disability, or suffered continuous severe pain due to the lack of medical

29

treatment. Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege that Defendants knew of and disregarded an excessive risk to his health or safety. Plaintiff does not assert that he requested "sick call" or sought medical treatment for his tailbone injury and was denied such treatment. The record reveals that on January 27, 2013, Plaintiff was evaluated by Health Service following his fall. (Document No. 53-2, pp. 6 – 18.) Plaintiff complained of only back pain and the burns to his lower legs. (Id.) Defendant Panaguiton examined Plaintiff's back noting a contusion and x-rays were ordered. (Id.) The x-rays of Plaintiff's back were conducted the following day and revealed negative findings. (Id., p. 20.) A thorough reveal of Plaintiff's medical records fails to reveal any further complaints regarding his alleged tailbone injury. Furthermore, there is no indication in Plaintiff's Complaint that Defendants were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, or that Defendants drew that inference, regarding his alleged tailbone injury. Accordingly, the undersigned finds that Plaintiff's allegations regarding his tailbone injury cannot be construed to implicate a constitutional right for the violation of which relief can be granted under Bivens. Accordingly, the undersigned recommends that Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment be granted as to the foregoing injury.

> *(ii)*     ***Burn Injury.***

Plaintiff alleges that Defendants Wright, Goode, Panaguiton, Matos acted with deliberate indifference in diagnosing and providing treatment for his burn injuries. For purposes of an Eighth

Amendment claim, a medical need is serious if it involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. Plaintiff alleges that his condition caused continuous pain and suffering. Accordingly, the undersigned will assume for purposes of this motion that Plaintiff's injuries were serious enough to give rise to an Eighth Amendment claim.

Next, the undersigned will consider whether Defendants Wright, Goode, Panaguiton, and Matos acted with deliberate indifference to Plaintiff's health and safety under a subjective standard. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff contends that Defendants acted with deliberate indifference in failing to properly diagnosis the severity of his burns and provide appropriate treatment. Plaintiff reported to Health Services on January 27, 2013, stating that suffered burns to his lower legs after he slipped and fell in the kitchen while carrying a bucket of hot water. (Document No. 53-2, pp. 6 - 18.) Plaintiff was examined by Defendant Panaguiton, who noted that Plaintiff had first to second degree burns on his right lower leg, left lower leg, and dorsum of his feet. (Id.) Defendant Panaguiton treated Plaintiff's burns by aseptically sloughing off the skin, cleaning the area, applying Silvadene cream, and applying non-adhesive gauze to the burn area. (Id.) Defendant Panaguiton noted that Plaintiff requested to be transported to a burn specialist and initially refused to allow her to apply the burn cream. (Id.) Additionally, Plaintiff initially refused to obey Defendant Panaguiton's instructions to not pick at the skin after the area was cleaned. (Id.) Defendant Panaguiton prescribed Ibuprofen 800 mgs for pain, Penicillin 500 mgs, and Silver Sulfadizine cream. (Id.) Defendant Panaguiton scheduled Plaintiff to return to medical for the next nine days for dressing changes. (Id.)

Two days later, Plaintiff was evaluated by R.N. Goans and it was noted that his burns showed improvement. (Id., pp. 21 – 22.) R.N. Goans changed the dressings and applied Silvadene cream. (Id.) Since Plaintiff was leaving the institution that day via a state writ, R.N. Goan applied abdominal pads to Plaintiff's ankles to prevent injury from the shackles and instructed Plaintiff as to wound care. (Id.) Plaintiff's prescriptions for Ibuprofen and Penicillin were continued. (Id.) Upon Plaintiff's return to FCI McDowell on February 15, 2013, Plaintiff was evaluated by R.N. Goan. (Id., pp. 23 – 28.) Plaintiff complained that the burns on his legs were painful and R.N. Goan approved Plaintiff for medical shoes. (Id.) The following day, Plaintiff reported to Health Services complaining that the burn to his right lower leg was infected. (Id., pp. 28 – 31.) Plaintiff was examined by R.N. Walters, who noted that the burn had a scab with very small amount of normal drainage and no signs of infection. (Id.) Plaintiff was instructed to leave the wound open to air to aid in the healing process and to report to Health Services immediately if his condition worsens. (Id.)

Approximately two weeks later, on March 1, 2013, Plaintiff reported to Health Services for a follow-up appointment regarding the burns to his lower legs. (Id., pp. 32 - 33.) Although Plaintiff complained that the area was "tight," he denied any pain, redness or discharge. (Id.) Defendant Goode evaluated Plaintiff, noting that the wounds were clean and dry with no signs of infection and a "good eschar was in place, healing well." (Id.) Three days later, Plaintiff was evaluated at Health Services at the request of Defendant Lucas, who had received a complaint from Plaintiff that he had not been seen by a provider. (Id., pp. 34 - 36.) Defendant Panaguiton examined Plaintiff's legs and noted a "big area that has scab present with erythema just around the scab border." (Id.) Defendant Panaguiton, however, noted that there was no drainage, the skin was not

32

warm or tender, and the wound was improving. (Id.) During this examination, Plaintiff acknowledged that he had not taken his prescribed penicillin, but had stored it in his locker. (Id.) Defendant Panaguiton instructed Plaintiff to "avoid forcibly plucking the scab because it will bleed." (Id.) On March 26, 2013, Plaintiff reported to Health Services requesting "ointment to put on my skin." (Id. 37 - 39.) Defendant Panaguiton examined Plaintiff noting that the burn to Plaintiff's right lower leg was healed. (Id.) Defendant Panaguiton noted that there was still a spot where a scab was present with some redness to the skin around the scab, but there was no oozing, discharge, or bleeding. (Id.) Defendant Panaguiton provided Plaintiff with packs of ointment to apply daily and again advised Plaintiff to avoid picking at the scab. (Id.)

On April 19, 2013, Plaintiff reported to Health Services for a follow-up appointment but refused to wait to be evaluated by a Physician Assistant. (Id., pp. 40 – 43.) On May 14, 2013, Plaintiff reported to Health Services for a follow-up appointment and acknowledged that the area was healed and denied any pain. (Id., pp. 44 - 47.) Defendant Goode examined Plaintiff noting that the "right lower leg burn was completely healed, skin intact, dry and warm, and no redness, swelling or discharge." (Id.) On May 29, 2013, Defendant Matos evaluated Plaintiff noting that the burns to Plaintiff's lower legs were completely healed with new skin, mild red/pink in color, with scaling on a small area (2cm x 2 cm) inflicted by Plaintiff's scratching. (Id., pp. 48 - 50.) It was noted that there was no swelling or discharge. (Id.) Defendant Matos advised Plaintiff that the new skin was not as strong as the skin prior to injury and that Plaintiff would need to take care of the area by keeping the skin moisturized and refraining from scratching. (Id.)

Approximately two weeks later, on June 11, 2013, Plaintiff was evaluated by Defendant Goode following Plaintiff's complaint to executive staff. (Id., pp. 51 - 53.) Plaintiff complained of

33

pain and dry skin on his right lower leg. (Id.) Plaintiff, however, acknowledged that he had not been applying over-the-counter lotion or cream to the area because he did not think he should have to buy it. (Id.) Defendant Goode examined Plaintiff noting that there was a 2 x 2.5 cm area of dry scaling skin, but no redness or discharge. (Id.) Defendant Good further noted that the "area has good pink tissue with no sign of infection." (Id.) Defendant Goode provided Plaintiff with a commissary slip for Eucerin cream. (Id.) Plaintiff, however, stated that he would not be purchasing the cream and stated that 'You people don't know a damn thing about burns.'" (Id.) One week later, on June 16, 2013, Plaintiff reported to Health Services complaining of a "tight tingling sensation over the area of the burn." (Id., pp. 54 - 57.) Defendant Goode and Defendant Wright evaluated Plaintiff and advised him that his symptoms were normal for a burn and that he would have a scar over the area. (Id.) Plaintiff agreed that his right lower leg was healing. (Id.) Upon examination, it was noted that there was area of good pink tissue with no signs of infection. (Id.) Dr. Wright suggested that Plaintiff return to full duty at work and be issued an ankle brace. (Id.) Plaintiff was again instructed to use over-the-counter lotion as needed. (Id.) On June 19, 2016, Plaintiff returned to Health Services complaining that he should not have to purchase lotion from the commissary because he was burned at the institution. (Id., pp. 58 - 60.) Defendant Goode evaluated Plaintiff and prescribed Moisturin Cream for use two times a day for 30 days. (Id.)

Less than two weeks later, on July 30, 2013, Plaintiff was evaluated by Defendant Matos at the request of executive staff based upon Plaintiff's complaint of discomfort from the second degree burns to his right leg. (Id., pp. 61 - 63.) Defendant Matos noted that the "burn is healed, but the distal portion of his right leg shows granulation tissue, dryness, itch, and discomfort." (Id.) Defendant Matos prescribed Moisturin Cream, instructed Plaintiff not to touch the granulation

area, and apply hot compress as needed. (Id.) Plaintiff was transferred from FCI McDowell on December 27, 2013. (Id., p. 4.)

Based upon the foregoing, Plaintiff cannot satisfy the subjective component. The Court finds that Defendants did not act with deliberate indifferent in providing medical treatment for Plaintiff's burn injuries. First, the undersigned will consider Plaintiff's claim that he was misdiagnosed as having only second degree burns. Although Plaintiff contends that Defendant Panaguiton later acknowledged that Plaintiff suffered from third degree burns, there is no indication in the record of such a finding. Even assuming there was a misdiagnosis, such is insufficient to establish deliberate indifferent. In <u>Johnson v. Quinones</u>, 145 F.3d 164 (4th Cir. 1998), the Fourth Circuit dismissed a similar argument by the plaintiff and concluded that an incorrect diagnosis does not establish deliberate indifference. The Fourth Circuit stated as follows:

> Johnson argues that his symptoms – especially acromegaly – so obviously pointed to a pituitary tumor that the doctors were deliberately indifferent in treating Johnson for his symptoms without diagnosing his pituitary tumor. With this argument, Johnson would have us address the question of how obvious a condition must be before a doctor is deliberately indifferent in not diagnosing it. This question, however, misses the mark. The correct question is whether the doctor subjectively "knows of" the serious medical condition itself, not the symptoms of the serious medical condition. The prison official must but be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Thus, consciousness of a risk of serious harm is required.

<u>Id.</u> at 168(internal citations and quotations omitted). Similar to <u>Johnson</u>, there is no evidence that Defendants knew that Plaintiff had third degree burns and deliberately disregarded or failed to treat such. The record reveals that Defendants made sufficient efforts to diagnose and treat Plaintiff's symptoms. At most, Defendants may have been negligent in properly diagnosing the severity of Plaintiff's burns. It is well recognized, however, that a "negligence medical diagnoses or treatment, without more, do not constitute deliberate indifference." <u>Webb v. Hamidullah</u>, 281 Fed.Appx. 159,

166 (4th Cir. 2008); also see Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986)("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

Next, Plaintiff contends that he should have been transported to an outside doctor or burn specialist following his injury. The record, however, reveals that Defendant Panaguiton treated Plaintiff's burns by removing the damaged skin, cleaning the area, applying burn cream, and wrapping the area with non-adhesive gauze. Although Plaintiff may have preferred treatment from an outside doctor or burn specialist, an inmate's disagreement with his medical care or the course of treatment for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." Malcomb v. Raja, 2010 WL 3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977)(finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one medication over another does not give rise to a constitutional violation.")

Third, Plaintiff appears to argue that Defendants were deliberately indifferent by instructing him to buy over-the-counter moisturizing cream. Defendants mere act of instructing Plaintiff to buy over-the-counter moisturizing cream that was available for purchase at the commissary does not establish deliberate indifference. The record further reveals that when Plaintiff requested that Defendants provide him with moisturizing cream, a prescription for such was consistently provided by Defendants. Thus, there is no evidence that Defendants deliberately

failed to provide necessary moisturizing cream. Finally, the undersigned finds that the record reveals that Defendants evaluated Plaintiff and provided treatment following each sick-call request. The record indicates that Plaintiff failed to follow Defendants' medical instructions regarding his prescription for Penicillin, not to pick or scratch the burn area, and to apply moisturizing cream to the area. Despite Plaintiff's noncompliance, Defendants consistently evaluated Plaintiff's condition, provided treatment, and prescribed medications. Thus, there is no evidence that Defendants or medical staff at FCI McDowell knowingly disregarded Plaintiff's need for medical treatment and an evaluation by a burn specialist. The medical records reveal that Defendants made sufficient efforts to treat Plaintiff's burn injuries. Plaintiff appears to simply disagree with the appropriate course of treatment. As stated above, an inmate's disagreement with his medical care or the course of treatment is an insufficient basis for a constitutional claim. See Wright v. Collins, 766 F.2d at 849. Accordingly, the undersigned finds that Defendants Wright, Goode, Panaguiton, and Matos did not act with deliberate indifference in providing medical treatment for Plaintiff's condition. The undersigned finds it unnecessary to consider the other reasons which the Defendants have submitted for dismissal regarding Plaintiff's Bivens claim.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's "Motion to Dismiss Without Prejudice Both Defendants Panaguiton and Matos" (Document No. 48), **GRANT** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 53), **DISMISS** Plaintiff's Complaint (Document Nos. 4 and 25), and remove this matter from the Court's docket.

37

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: November 28, 2016.

Omar J. Aboulhosn
United States Magistrate Judge